UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| RONALD TINGLE, | ) |
| Petitioner, | ) ) ) |
| v. | ) ) Case No. 4:19-cv-00062-TWP-KMB |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) ) |

### ORDER GRANTING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255

This matter is before the Court on a Motion for Relief pursuant to 28 U.S.C. § 2255 , filed by Petitioner Ronald Tingle ("Mr. Tingle") (Dkt. 1). A jury convicted Mr. Tingle of drug and firearm offenses and he was sentenced to 300 months in prison in Case No. 4:15-cr-00023-TWP-VTW ("Crim. Dkt.") (Crim. Dkt. 189). He initiated this § 2255 action arguing that his attorney was ineffective during plea negotiations and that he is entitled to resentencing.[1] The Court appointed counsel to represent Mr. Tingle and on September 19, 2022 an evidentiary hearing was held on the motion. For the reasons explained below, Mr. Tingle has shown that he is entitled to relief and the motion is **GRANTED** to the extent that the United States is Ordered to re-offer the binding plea of ten years. *See* Dkt. 57 at ¶ 1 (plea offer dated April 21, 2016). Presuming Mr. Tingle accepts the offer, the Court will then exercise its discretion in determining whether to vacate the convictions and resentence Mr. Tingle pursuant to the plea agreement. *See Lafler v. Cooper*, 566 U.S. 156, 174 (2012).

---

[1] Additional claims for relief were considered and denied in the April 19, 2021 Entry Discussing Motion for Relief Pursuant to 28 U.S.C. § 2255 and Directing Further Proceedings (Dkt. 21).

### I. LEGAL STANDARD

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

Mr. Tingle's asserted grounds for relief are based on the Sixth Amendment right to counsel. A petitioner claiming ineffective assistance of counsel as grounds for relief under § 2255 bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021). If a petitioner cannot establish one of the *Strickland* prongs, the court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

To satisfy the first prong of *Strickland*, the petitioner must show specific acts or omissions of his counsel that fell below objective standards for reasonably effective representation. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009). The court must then decide whether considering all of the circumstances counsel's performance was outside the wide range of professionally

competent assistance. *Id.* To show prejudice for the second prong of *Strickland*, a petitioner "must show that but for counsel's errors, there is a reasonable probability that the result would have been different." *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (cleaned up).

## II.  PROCEDURAL BACKGROUND

In August 2015, investigators performed three controlled purchases of methamphetamine from Tingle. On September 2, 2015, investigators searched Tingle's residence pursuant to state search warrants, and recovered, among other things, 165 grams of methamphetamine, currency, scales, and a loaded Smith & Wesson 9mm handgun on top of the desk in which methamphetamine, scales, and currency were located.

On October 20, 2015, Mr. Tingle was charged by Indictment with Count One: Possession of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii), and Counts Two, Three and Four: Distribution of Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 841(b)(1)(B)(viii), under Case No. 4:15-cr-00023-TWP-VTW (Crim. Dkt. 1). On April 21, 2016, the Government extended a plea offer to Mr. Tingle and explained that given the proximity of firearms to the controlled substances that were seized from Mr. Tingle's residence, if the offer were not accepted, it may seek to supersede the Indictment to include a possession of firearm count, pursuant to 18 U.S.C. § 924. (Crim. Dkt. 133-1 at 2.) Mr. Tingle was given until May 6, 2016 to accept the first offer, which had been presented to his original counsel, Paul Baugh ("Mr. Baugh"). (Crim. Dkt. 205 at 38.) The offer was not accepted by that deadline. Thereafter, counsel Brian Darling ("Mr. Darling") was appointed and entered his appearance on behalf of Mr. Tingle on June 8, 2016. (Crim. Dkt. 65.) Since Mr. Tingle was given new counsel, the Government re-extended the plea offer to new counsel, and gave them until July 29, 2016 to respond. Mr. Tingle did not accept the offer. On

July 15, 2016, the Government extended the same plea offer, again offering the July 29, 2016 deadline for Mr. Tingle to accept the plea offer. (Crim. Dkt. 133-2 at 2.) Mr. Tingle, again, did not accept the offer.

On February 3, 1982, when he was 25 years old, Tingle was convicted of Trafficking in Lysergic Acid, a felony out of Carrol County, Kentucky. (Crim. Dkt. 67-1; Crim. Dkt. 162 at ¶ 35.) On July 15, 2016, the Government filed an Information alleging that Tingle had been previously convicted of a Drug Trafficking Crime, pursuant to 21 U.S.C. § 851 (Crim. Dkt. 67), and a Second Superseding Indictment was returned (Crim. Dkt. 81).

Mr. Tingle proceeded to jury trial on the Second Superseding Indictment and after a two-day trial, on December 13, 2016, he was found guilty of Count One: possession of 50 grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii); Counts Two and Three: distribution of a mixture or substance containing a detectable amount of methamphetamine, in violation of §§ 841(a)(1) and (b)(1)(C); Count Four: distribution of 5 grams or more of methamphetamine, in violation of §§ 841(a)(1) and (b)(1)(B)(viii); and Count Five: possession of a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Crim. Dkt. 154).

On March 21, 2017, consistent with statutory requirements, the Court sentenced Mr. Tingle to 300 months' imprisonment (240 months for Counts 1-4 and 60 months for Count 5, to be served consecutively). (*See* Crim Dkt. 189.)

Mr. Tingle appealed to the Court of Appeals for the Seventh Circuit alleging the following grounds for relief: 1) the district court erred when it allowed a Government witness to give expert testimony without properly vetting the witness' credentials; 2) the Court erred when it allowed the same witness to testify regarding Mr. Tingle's mental state; 3) Mr. Tingle should have been granted

access to grand jury materials; and 4) prosecutorial vindictiveness. *See Tingle*, 880 F.3d at 852. In denying Mr. Tingle's appeal, the Seventh Circuit found that: 1) the expert testimony was admissible; 2) the expert witness did not improperly testify regarding Mr. Tingle's mental state; 3) the district court did not abuse its discretion when it refused Mr. Tingle access to grand jury materials; and 4) Mr. Tingle's due process rights were not violated when prosecutors sought superseding indictments after Mr. Tingle rejected the Government's plea offers. *Id*. at 850. The Seventh Circuit affirmed the conviction and sentence and Mr. Tingle subsequently filed a *writ of certiorari* with the United States Supreme Court, which was denied. *See Tingle v. United States*, 138 S. Ct. 1567 (2018).

On April 4, 2019, Mr. Tingle filed a motion for post-conviction relief pursuant to § 2255 in which he alleges that his attorney was constitutionally ineffective, specifically that his counsel: 1) failed to properly advise him to accept a plea deal instead of proceeding to trial; 2) failed to object to expert witness testimony and jury instructions during his trial; 3) was not present when the jury presented a question and the Court held a hearing and his attorney did not object to the response; 4) failed to object to Mr. Tingle being tried while in shackles; 5) failed to request a lesser included offense instruction for simple possession; 6) failed to object to the § 851; and 7) failed to withdraw as his attorney. *See* Dkts. 6, 11.

In its Order on April 21, 2021, the Court denied in part Mr. Tingle's motion for relief pursuant to 28 U.S.C. § 2255, finding that all but one of his claims should be dismissed with prejudice. (Dkt. 21.) Because there was an issue of fact bearing on Mr. Tingle's claim that his trial counsel, Mr. Darling, performed deficiently by failing to properly advise him to accept a plea deal instead of proceeding to trial, the Court concluded that an evidentiary hearing was required

to resolve this issue. *Id*. at 6-10. The Court appointed Sara Varner[2] of the Indiana Federal Community Defenders Office to represent Mr. Tingle. (Dkt. 22.)

On September 19, 2022, the Court held an evidentiary hearing pursuant to Rule 8 of the Rules on Motions Attacking Sentence under Section 2255. Three fact witnesses – Mr. Tingle, Mr. Darling, and Mr. Tingle's long-time partner Ms. Sandra Boettcher ("Ms. Boettcher") – testified at the hearing. After the hearing, the parties' counsel conferred and agreed on 17 exhibits that would be considered admitted for purposes of the hearing. *See* Dkt. 59-1.

### III.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

As a result of the evidentiary hearing, and after considering the record in both this case and the underlying criminal action, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the *Federal Rules of Civil Procedure*.

**A.   Findings of Fact**[3]

On June 18, 2016, the Court appointment Mr. Darling to represent Mr. Tingle, (Dkt. 65). Two days later, Mr. Tingle contacted Mr. Darling by letter. (Hrg. Ex. 9.) On July 12, 2016, Mr. Darling visited Mr. Tingle at the Grayson County Detention Center for approximately 1.1 hours. (Hrg. Ex. 135.) During this visit, Mr. Darling was not able to review any discovery with Mr. Tingle, (Dkt. 62 at 21:7-10), and that same day, Mr. Darling filed a motion to continue the pending trial because he needed to review discovery and had not yet been able to provide Mr. Tingle the discovery or discuss it with him, *id*. at 22:14-20. (*See also* Hrg. Ex. 15.) Also on July 12, 2016,

---

[2] The Court thanks Ms. Varner for accepting the appointment and representing Mr. Tingle.

[3] Certain issues of fact cannot be resolved in this case without making a determination of which version of the pivotal events was more credible. In making this and other determinations as to contested issues, the Court has considered the customary factors associated with credibility–*e.g.,* demeanor, detail, consistency, opportunity to observe or perceive the events testified to, etc. It has not relied solely on the number of witnesses who related a particular event or on any other single factor.

6

Mr. Tingle sent another letter to Mr. Darling asking him to "open [the] lines of communication" and expressing concern that he cannot be "properly represented without good communication." (Hrg. Ex. 13.)

On July 15, 2016, the Government filed a notice under 21 U.S.C. § 851 alleging that Mr. Tingle had a prior Kentucky drug conviction in 1982. (Hrg. Ex. 16.) On July 15, 2016, Assistant United States Attorney ("AUSA") MaryAnn Mindrum sent a letter to Mr. Darling enclosing discovery, offering Mr. Tingle a binding plea for a ten-year sentence, and requesting a response by July 29, 2016. (Hrg. Ex. 17.)

On July 20, 2016, Mr. Darling sent a letter to Mr. Tingle enclosing the Government's discovery letters, including the July 15, 2016 letter from AUSA Mindrum. (Hrg. Ex. 22.) No discovery was enclosed with the letter. *Id*. On July 21, 2016, Mr. Tingle sent a letter to Mr. Darling enclosing the plea offer sent to Mr. Tingle's prior attorney, Mr. Baugh. Mr. Tingle asked about his offense level and the applicable time period for his prior 1982 Kentucky drug offense to be used under the Federal Sentencing Guidelines § 4A1.2(e) and ended the letter by asking for responses to his questions. (Hrg. Ex. 23).

On July 22, 2016, Mr. Tingle sent a letter to Mr. Darling stating in response to Mr. Darling's July 20 letter that he believed his offense level should be lower under the sentencing guidelines. (Hrg. Ex. 24). Mr. Tingle also specifically mentioned his prior 1982 Kentucky drug conviction and restoration of rights on that case and asked Mr. Darling which guidelines manual would apply. *Id*. On August 4, 2016, Mr. Tingle sent another letter to Mr. Darling (Hrg. Ex. 28). In this letter, Mr. Tingle expressed that he was waiting for a reply to his last three or four letters and asked Mr. Darling for a telephone number and a time when they could talk. *Id*. Mr. Tingle

also wrote that he wanted to go over the discovery with Mr. Darling that he had not seen or heard and that he had many unanswered questions about his case. *Id*.

On August 10, 2016, AUSA Mindrum emailed Mr. Darling to find out whether Mr. Tingle would accept the plea offer. (Hrg. Ex. 29.) A week later, Ms. Boettcher also emailed Mr. Darling to ask whether he still represented Mr. Tingle and to let Mr. Darling know that Mr. Tingle "has not received anything from you, no response to his letters or emails." (Hrg. Ex. 32.)

On August 22, 2016, Mr. Tingle again wrote to Mr. Darling stating that it had been over two weeks since he had sent his last letter and a month since Mr. Darling's last correspondence of July 20. (Hrg. Ex. 34.) Mr. Tingle wrote that his calls were not being accepted and that he was getting no letters in return. *Id*. He told Mr. Darling again that he had many unanswered questions about his case. *Id*. That same day, AUSA Mindrum emailed Mr. Darling inquiring whether Mr. Tingle would accept the plea agreement. (Hrg. Ex. 33.)

On August 26, 2016, Mr. Darling met with Mr. Tingle for one hour and 12 minutes at Grayson County Detention Center. (Hrg. Ex. 135.) That day, Mr. Tingle sent a letter to Mr. Darling expressing gratitude for the visit. (Hrg. Ex. 36.) In that letter, Mr. Tingle again stated that he had many more questions about his case, explained that his calls to Mr. Darling were not collect but rather were prepaid from his account, and asked to have his calls accepted. *Id*.

On September 8, 2016, Mr. Darling sent a letter to Mr. Tingle enclosing file materials from his previous trial attorney Mr. Baugh. (Hrg. Ex. 37.) Mr. Darling stated he needed to review the file to evaluate a potential motion to suppress. *Id*. On September 11, 2016, Mr. Tingle sent a letter to Mr. Darling stating he had received no mail since Mr. Darling's visit two weeks prior. (Hrg. Ex. 41.)

On September 12, 2016, AUSA Mindrum emailed Mr. Darling again asking whether Mr. Tingle would accept the plea agreement. (Hrg. Ex. 42.) On September 14, 2016, Mr. Darling met with Mr. Tingle via videoconference at Grayson County Detention Center for 1 hour and 6 minutes. (Hrg. Ex. 135.)

On September 16, 2016, Mr. Darling met with Ms. Boettcher. (Hrg. Ex. 39.) On September 20, 2016, AUSA Mindrum emailed Mr. Darling again to ask whether Mr. Tingle would accept the plea agreement. (Hrg. Ex. 49.) That same day, Mr. Darling emailed Ms. Boettcher, stating that the issues she thought were important would not affect guilt or innocence as they pertained to other matters such as the search warrant. (Hrg. Ex. 48.) Ms. Boettcher pointed out to Mr. Darling that the weight of the drugs would be different. *Id*.

On September 26, 2016, Mr. Tingle sent a letter to Mr. Darling stating that it had been over two weeks since his last contact with Mr. Darling. (Hrg. Ex. 50.) Mr. Tingle expressed concern that his move to Henderson County Detention Center would further disrupt communication and asked that Mr. Darling address the issue to the Court. *Id*. Mr. Tingle asked to be informed as to the new developments in the case including the attack of the search warrant. *Id*.

On September 26, 2016, Mr. Tingle filed a writ of habeas corpus. His motion stated that he was not receiving visits, his letters were not being answered, and he did not have all the discovery in his case. (Hrg. Ex. 51.) On October 4, 2016, AUSA Mindrum emailed the Court, copying Mr. Darling and notifying the Court that the case was likely to proceed to trial unless a plea was entered. (Hrg. Ex. 54.) On October 6, 2016, Mr. Tingle sent a letter to Mr. Darling stating that he had a list of questions and motions that needed to be addressed immediately, including suppression of the search warrant. (Hrg. Ex. 55.) On October 8, 2016, Mr. Darling

9

emailed Ms. Boettcher asking if she had seen and talked with Mr. Tingle. Mr. Darling stated he needed to know about a plea decision before the indictment was superseded. (Hrg. Ex. 56.)

On October 9, 2016, Ms. Boettcher emailed Mr. Darling asking him to contact Mr. Tingle. (Hrg. Ex. 56.) She stated that Mr. Tingle was very concerned that Mr. Darling had not responded to his letters. *Id*. She asked that Mr. Darling contact Mr. Tingle directly. *Id*.

On October 10, 2016, Mr. Darling emailed Ms. Boettcher that he did not understand Mr. Tingle's "hang-ups on these collateral issues which have nothing to do with his guilt or innocence in this case." (Hrg. Ex. 56.) He told Ms. Boettcher, "Assuming that we are successful with the search warrant being thrown out, he still has to face up to the buys/sales of substances." *Id*. He further stated, "I do not have time to go to Henderson this week, but I will try to arrange a teleconference and I will let you know so that you can be present if you wish." *Id*.

Two days later, on October 12, 2016, Mr. Darling sent a letter to Mr. Tingle stating that he had received Mr. Tingle's letters of September 26 and October 6, 2016, and that many of the issues that Mr. Tingle raised are "collateral issues." (Hrg. Ex. 58 at 1.) Mr. Darling's letter also stated, "[E]ven if you successfully attack and suppress evidence seized at your home (via search warrant) and/or in your truck (via warrantless search), the Government still has a solid case based upon the "controlled buys." *Id*. The letter then stated that Mr. Tingle needed to act immediately and let Mr. Darling know if he would accept or reject the plea offer. *Id*.

On October 14, 2016, Mr. Tingle wrote that he was unsure which matters were "collateral." (Hrg. Ex. 61.) He asked Mr. Darling to "explain in more detail all of the issues and items [he] inquired about." *Id*. He also told Mr. Darling,

> [e]ven if the Government did convict me of the controlled buys my sentence would fall under a offense level of 18 which would result in much less time of incarceration of 24-30 months or even less minus three points for acceptance of responsibility of 15-21 months if my calculations are correct. These are numbers I

would agree and plea to.

*Id*. Mr. Tingle also asked to be provided with the rest of his discovery, photographs, and recordings. *Id*.

On October 19, 2016, the Government superseded the Indictment, and Mr. Tingle's mandatory minimum sentence became 25 years. (Crim. Dkt. 69.) On November 8, 2016, the Court held an initial hearing on the Superseding Indictment. (Crim. Dkt. 109.) At that hearing, Mr. Darling stated that he sent Mr. Tingle the discovery CDs that he had received from AUSA Mindrum, that Mr. Tingle had not previously received them, and that Mr. Darling himself had not been able to access the materials on the CDs and had asked for additional copies of the discovery. (Crim. Dkt. 283 at 5:25-6:8; *see also* Dkt. 62 at 85:7-14.)

The Court held a final pretrial conference on November 16, 2021. (Crim. Dkt. 120.) At the final pretrial conference, in response to the Court's question about whether Mr. Tingle rejected the plea offer, Mr. Tingle's counsel stated that there "wasn't necessarily a rejection, but the time elapsed on it." (Crim Dkt. 205 at 38-41.)

On December 2, 2016, Mr. Darling filed a motion to continue the trial date. (Hrg. Ex. 117.) In that motion, Mr. Darling stated as a basis for the continuance that he had not had enough time to provide and discuss the discovery with Mr. Tingle. (Hrg. Ex. 117.)

**B.**     **Conclusions of Law**

A petitioner claiming ineffective assistance of counsel as grounds for relief under § 2255 bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021). For the reasons below, the Court finds that Mr. Tingle has met this burden.

11

1. **<u>Deficient Performance</u>**

The Supreme Court has recognized that defendants are entitled to the effective assistance of competent counsel during plea negotiations. *See Lafler v. Cooper*, 566 U.S. 156 (2012). In *Missouri v. Frye,* 566 U.S. 134 (2012), the Supreme Court held "that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 145. A lawyer's performance may be deficient if "he advises his client to reject a plea bargain in the face of overwhelming evidence of guilt and an absence of viable defenses." *Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir. 2005). The Supreme Court has instructed that courts must "respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, 562 U.S. 115, 125 (2011). Judicial restraint is critical because "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Id*. at 124. To succeed on a claim that counsel's deficient performance led him to reject the Government's plea offers, Mr. Tingle must show not only that his attorney acted in error, but also that — had his attorney provided competent advice — there is a reasonable probability that the plea offer would have been presented to the Court, that the Court would have accepted it, and that the conviction or sentence or both would have been less severe than the judgment imposed. *Lafler*, 566 U.S. at 162.

Here, the charges in Mr. Tingle's Indictment carried a mandatory minimum penalty of 10 years. (Dkt. 64 at 2; *see also* Crim. Dkt. 13 (Indictment Penalty Sheet).) Prior to the Superseding Indictment, the Government's proposed plea offer included a joint recommendation of a binding plea of 10 years. (Hrg. Ex. 6.) Mr. Tingle's sentence exposure increased from a mandatory minimum of 10 years to life to a mandatory minimum of 25 to life when the Government filed the

Superseding Indictment. (Dkt. 64 at 3; Hrg. Ex. 6.) Mr. Tingle has therefore shown that there is a reasonable probability that the plea offer would have been presented to and accepted by the Court, and that the conviction or sentence or both would have been less severe than the judgement imposed. *See Lafler*, 566 U.S. at 162. At issue then is only whether deficiencies in Mr. Darling's performance led Mr. Tingle to reject the Government's 10-year offer. *Id*.

Based on the evidence in the record, the Court concludes that Mr. Darling's performance was constitutionally ineffective. First, the letters to Mr. Darling demonstrate that Mr. Tingle repeatedly asked Mr. Darling questions that were left unaddressed during the critical plea negotiation stage. These questions bore on the potential suppression of evidence as well as the potential treatment of Mr. Tingle's prior conviction for purposes of sentencing. For instance, Mr. Tingle testifies that Mr. Darling never told him that he had no viable motion to suppress. (Dkt. 62 at 213:3-5.) The Court credits Mr. Tingle's testimony, particularly in light of Mr. Tingle's letters to Mr. Darling during the pendency (and eventual lapse) of the Government's 10-year offer that reference a potential motion to suppress. Whether grounds for a suppression motion existed and its likelihood of success should have been conveyed to Mr. Tingle. The Court credits Mr. Tingle's testimony that it was not, especially in light of correspondence in which Mr. Darling references a potential suppression motion under the assumption that one would succeed. *See* Hrg. Ex. 56 ("Assuming that we are successful with the search warrant being thrown out …"); *see also* Hrg. Ex. 58 ("Even if you successfully attack and suppress evidence seized at your home (via search warrant) and/or in your truck (via warrantless search..."). The letter at Exhibit 58 was the last one that Mr. Darling sent to Mr. Tingle before the Government superseded the Indictment, and it provides clear evidence that the Government's 10-year plea offer lapsed as Mr. Darling failed to properly advise Mr. Tingle of the likelihood of success of a motion to suppress.

Similarly, Mr. Darling left unanswered questions Mr. Tingle had about the potential effect of his prior 1982 conviction. *See* Hrg. Ex. 37 (Mr. Darling's letter to Mr. Tingle failing to advise him about the issue and stating only that the issue would be taken up at sentencing). Without being advised by Mr. Darling on the issue, Mr. Tingle persisted in his apparent misapprehension that a prior conviction must be within a 15-year window to be used against him. *See* Hrg. Ex. 23 and 24 (Mr. Tingle's letters to Mr. Darling); *see also* Crim. Dkt. 241 at 9:19-20 (testimony from Mr. Darling at a status of counsel hearing that "[Mr. Tingle]'s got a prior conviction that's -- outside the 15-year realm back in '82, this type of thing"). Again, the Government's 10-year plea offer lapsed as Mr. Tingle remained confused about the effect of his 1982 conviction and as Mr. Darling provided no advice that would allow Mr. Tingle to make an informed decision on the plea offer.

Finally, Mr. Tingle testified at the evidentiary hearing that he had no contact with Mr. Darling outside of the letters and visits documented at the evidentiary hearing, which totaled 3 hours and 24 minutes in visits, of which only 2 hours and 18 minutes occurred after Mr. Darling received any discovery in the case. (*See also* Hrg. Ex. 135 at 1-10.) Although Mr. Darling testified that his billing records did not reflect all of his work, Mr. Tingles notes and references to visits in his letters are corroborated by the times recorded in Mr. Darling's CJA billing voucher.

In light of Mr. Darling's own admission that the discovery in this case was "voluminous," (Hrg. Ex. 135 at 2), and that he had not been able to provide, review, and sufficiently discuss the discovery with Mr. Tingle adequately prior to the lapse of the 10-year plea offer, (Dkt. 62 at 85:23-25), the Court finds that Mr. Darling's advice to Mr. Tingle was not based on a sufficient review of the case.

Moreover, having become familiar with Mr. Tingle over the past seven years, the Court agrees with the Governments characterization that "Mr. Darling had a very difficult and stubborn

14

client that he was dealing with." *Id*. at 10:13-15. But counsel is required to provide, review, and sufficiently discuss the discovery and otherwise communicate; even with the difficult and stubborn client. For all of the above reasons, the Court finds that Mr. Darling's conduct fell below an objectively reasonable standard of care, and thus was constitutionally ineffective.

### 2. **Prejudice**

The Court also finds that Mr. Tingle has demonstrated prejudice. As stated above, Mr. Tingle's sentence exposure increased from a mandatory minimum of 10 years to life to a mandatory minimum of 25 to life when the Government superseded the Indictment. *Id*. at 3; Hrg. Ex. 6. Testimony and exhibits presented at the evidentiary hearing show that Mr. Tingle remained open to the possibility of a plea agreement. Specifically, Mr. Tingle testified at the evidentiary hearing that had he been fully advised by Mr. Darling about the likelihood of success on his motion to suppress and the strength of the Government's case against him, he would have accepted the Government's ten-year offer. (Dkt. 62 at 216:3-6.)

> Q: Had [Mr. Darling] sat down with you to explain the strengths of the Government's evidence against you and any possible defenses?
>
> A: No.
>
> Q. Had he fully explained to you why he believed this plea was in your best interests?
>
> A: No.
>
> Q: If you had understood that you had no viable suppression motion and the strength of the Government's evidence against you, would you have accepted the plea?
>
> A: I would have.

*Id*. The Court credits this testimony. Accordingly, Mr. Tingle has demonstrated that he was prejudiced by Mr. Darling's deficient performance.

Given these findings and conclusion, the Court will now pursue the remedy set forth in *Lafler*, 566 U.S. at 174 ("The correct remedy in these circumstances … is to order the [Government] to reoffer the plea agreement. Presuming [the defendant] accepts the offer, the [Court] can then exercise its discretion in determining whether to vacate the convictions and resentence[.]").

## IV.  CONCLUSION

Mr. Tingle's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt. 1) is **GRANTED** to the extent that the United States is **ORDERED** to re-offer the April 21, 2016 binding plea offer of ten years. *See* Dkt. 57 at ¶ 1. Presuming Mr. Tingle accepts the offer, the Court will then exercise its discretion in determining whether to vacate the convictions and resentence Mr. Tingle pursuant to the plea agreement. Mr. Tingle shall file a notice of his intentions by no later than **January 20, 2023**.

The Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 in (Crim. Dkt. 245) filed in the underlying criminal action is also provisionally **GRANTED**. Final judgment will not issue until after January 20, 2023.

**SO ORDERED.**

Date:  12/22/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Sara Varner
INDIANA FEDERAL COMMUNITY DEFENDERS
sara.varner@fd.org

MaryAnn Totino Mindrum
UNITED STATES ATTORNEY'S OFFICE
maryann.mindrum@usdoj.gov

James Robert Wood
UNITED STATES ATTORNEY'S OFFICE
bob.wood@usdoj.gov